UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NAJIB ALI ADEN,<br><br>　　　　　　　Petitioner,<br><br>　v.<br><br>KIRSTJEN NIELSEN, *et al.*,<br><br>　　　　　　　Respondents. | NO. C18-1441RSL<br><br>ORDER GRANTING IN PART<br>HABEAS PETITION |

Najib Ali Aden, proceeding through counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Dkt. #1. Petitioner claims that he has been ordered removed to Kenya, but that the U.S. Immigration and Customs Enforcement ("ICE") attempted to remove him to Somalia without giving him a hearing regarding his fear of persecution and torture in that country. Id. Petitioner is currently detained by ICE and seeks immediate release. In October 2018, the Court stayed petitioner's removal pending resolution of this matter.

The Court adopts the Background section of the Report and Recommendation as well as subsections A, B, C, and F of the Discussion section (Dkt. #11 at 1-14) as incorporated below:

ORDER GRANTING IN PART
HABEAS PETITION - 1

## I. BACKGROUND

Petitioner was born in a refugee camp in Kenya to Somali parents and was orphaned as an infant. Dkt. #2-1 at 1-2; Dkt. #8-1 at 1; Dkt. #8-2 at 1. He was raised by an aunt in the Kenyan camp and came to the United States as a refugee in 2007 when he was 15 years old. Dkt. #2-1 at 1; Dkt. #2-2 at 12-13; Dkt. #6-1 at 2-3; Dkt. #8-2 at 1. Petitioner applied for lawful permanent residence in December 2011, and his application was approved in May 2012. Dkt. #6-1 at 5-10.

A. Petitioner's removal proceedings

In 2014, petitioner was convicted of robbery offenses in King County, Washington. Dkt. #2-2 at 11. After he served his sentence, the Department of Homeland Security ("DHS") took him into custody and detained him at the Northwest Detention Center. *Id.* at 1-3, 10-12; *see also* Dkt. #6-1 at 17, 19. During an initial interview with an immigration officer on October 4, 2017, petitioner indicated that he is a native and citizen of Kenya and that his deceased parents were natives and citizens of Somalia. Dkt. #6-1 at 14. The same day, DHS initiated removal proceedings against him by filing a Notice to Appear ("NTA"), which alleged that he is removable based on his robbery convictions. Dkt. #2-2 at 1-3. The NTA alleged that he is a native and citizen of Kenya. *Id.* DHS determined that petitioner should be detained pending his removal proceedings. Dkt. #6-1 at 17; *see also id.* at 19.

During removal proceedings, petitioner admitted the allegations in the NTA, including that he is a native and citizen of Kenya. Dkt. #7 at ¶9. Petitioner designated Kenya as the country of removal. Dkt. #2-1 at ¶4; Dkt. #7 at ¶9. Somalia was not

ORDER GRANTING IN PART
HABEAS PETITION - 2

discussed during the removal proceedings as an alternative country of removal. Dkt. #2-1 at ¶4. On December 20, 2017, the immigration judge ("IJ") ordered petitioner removed to Kenya. Dkt. #2-1 at ¶4; Dkt. #7 at ¶9; Dkt. #7-1 at 18. Both parties waived the right to appeal the IJ's order. Dkt. #7-1 at 18.

B.  ICE's efforts to remove petitioner

On January 9, 2018, U.S. Immigration and Customs Enforcement ("ICE") Deportation Officer Jose Alvarez submitted a travel document request to the Kenyan government on petitioner's behalf: the request asserted that petitioner was a native and citizen of Kenya.[1] Dkt. #7 at ¶11; Dkt. #7-2 at 2-3. On February 26, 2018, the Consulate General of the Republic of Kenya issued a determination finding that petitioner is not a citizen of Kenya and denying ICE's request for a travel document. Dkt. #7 at ¶14; Dkt. #7-2 at 8; Dkt. #10 at ¶6.

Subsequently, Officer Alvarez began to inquire about the possibility of removing petitioner to Somalia, where his parents were born. Dkt. #10 at ¶7. In March 2018, Officer Alvarez informed petitioner that Kenya had denied his request for a travel document and that ICE would be seeking a travel document from Somalia. Id. at ¶8; Dkt. #2-1 at ¶5. The parties dispute what occurred during this conversation. Petitioner avers that he told Officer Alvarez that he was afraid to go to Somalia and would want to reopen his case to fight any efforts to send him there. Dkt. #2-1 at ¶¶4-5; Dkt. #8-2 at ¶2. According to petitioner, Officer Alvarez told him that he could reopen his case but

---

[1] The travel document request incorrectly stated that petitioner's parents were born in Kenya, Dkt. #7-2 at 4, but this oversight was corrected during petitioner's interview with Kenyan consular officials, Dkt. #10 at ¶6.

ORDER GRANTING IN PART
HABEAS PETITION - 3

they should get a travel document first. Dkt. #8-2 at ¶3. Officer Alvarez, on the other hand, declares that petitioner stated he did not want to go to Somalia, but he never stated he was afraid he would be harmed there. Dkt. #10 at ¶9. Officer Alvarez left petitioner with paperwork to fill out that would assist in obtaining a travel document from Somalia. Dkt. #8-2 at 4.

When petitioner and Officer Alvarez next met to discuss obtaining a travel document to Somalia, petitioner refused to cooperate. Dkt. #8-2 at ¶5; Dkt. #10 at ¶¶10-11. Petitioner stated that he wanted to reopen his case and was consulting with an attorney. Dkt. #8-2 at ¶5; Dkt. #10 at ¶¶10-11.

On March 21, 2018, Officer Alvarez submitted a Somali travel document application on petitioner's behalf, claiming that petitioner was a native of Kenya and a citizen of Somalia. Dkt. #7-2 at 10-11. Officer Alvarez completed the application without petitioner's assistance or review. *See* Dkt. #10 at ¶10. As petitioner points out, there appear to be several errors in the application, including the assertions that petitioner was born in Somalia and had previously lived in Somalia, when in fact he has never been there. *See* Dkt. #8-1; Dkt. #8-2 at ¶¶6-7; Dkt. #2-1 at ¶4.

On March 30, 2018, ICE released petitioner from immigration custody on an order of supervision because it had determined that removal was not significantly likely in the reasonably foreseeable future. Dkt. #7 at ¶¶18-19; Dkt. #7-2 at 13, 15-17. The release notification letter informed petitioner that ICE would continue to make efforts to obtain a travel document and, "Once a travel document is obtained, you will be required to surrender to ICE for removal. You will, at that time, be given an opportunity

ORDER GRANTING IN PART
HABEAS PETITION - 4

to prepare for an orderly departure." Dkt. #7-2 at 13.

On May 17, 2018, the Embassy of the Federal Republic of Somalia determined that petitioner is a national and issued a travel document that was valid until November 18, 2018. Dkt. #7 at ¶20; Dkt. #7-2 at 19. ICE did not inform petitioner that it had obtained the travel document. Dkt. #2-1 at ¶¶8-9.

On June 15, 2018, an ICE officer called petitioner and informed him that he had been approved to do check-ins with ICE by phone but would need to come into the office to sign paperwork. Id. at ¶8. When petitioner reported to the ICE office three days later, an officer served him with a Notice of Revocation of Release and detained him. Dkt. #7 at ¶23; Dkt. #7-2 at 21-22; Dkt. #2-1 at ¶8. The Notice informed petitioner that ICE had determined that there was a significant likelihood of removal in the reasonably foreseeable future, but otherwise ICE officers refused to tell petitioner what was going on. Dkt. #7-2 at 21; Dkt. #2-1 at ¶8. On June 21, 2018, ICE transferred petitioner to a facility in Louisiana as a part of the staging process for a chartered flight to Somalia. Dkt. #7 at ¶24; Dkt. #2-1 at ¶8. ICE officers continued to refuse to tell petitioner what they were planning to do with him. Dkt. #2-1 at ¶9. After speaking with other detainees, petitioner determined that a group was going to be flown to Somalia on June 28, 2018. Id. Petitioner's family contacted the Somali consulate, which confirmed that he was going to be on that flight. Id. No one from ICE ever informed petitioner that he was going to be sent to Somalia. Id.

Petitioner was able to contact an attorney at the Northwest Immigrant Rights Project, Chris Stanislowski, regarding his situation. Id. On June 22, 2018, Attorney

Stanislowski contacted ICE on petitioner's behalf, raising the fact that Somalia had never been designated as a country for deportation by an IJ and that petitioner feared being sent to that country. Id.; Dkt. #7 at ¶25. The same day, ICE responded that it did not oppose petitioner filing a motion to reopen in order to seek asylum and related relief regarding deportation to Somalia and that it would stay his removal in anticipation of such a motion being filed. Dkt. #7 at ¶25. ICE cancelled petitioner's scheduled removal to Somalia and transferred him back to the Northwest Detention Center on July 10, 2018. Id.

On August 20, 2018, ICE contacted Attorney Stanislowski via email, stating that petitioner's removal had been cancelled based on the understanding that petitioner intended to seek asylum and inquiring if petitioner intended to file a motion to reopen, as one had not yet been filed. Id. at ¶27. Attorney Stanislowski informed ICE that petitioner did not intend to file a motion to reopen. Id. Petitioner's position is that ICE must file a motion to reopen if it seeks to designate Somalia as the removal country. *See* Dkt. #8 at 8-9. On September 19, 2018, ICE informed petitioner, through Attorney Stanislowski, that if he did not file a motion to reopen by October 3, 2018, ICE would proceed with coordinating petitioner's removal to Somalia. Dkt. #7 at ¶28. ICE reiterated that it would not oppose a motion to reopen. Id.

C. The instant habeas action

On October 1, 2018, petitioner filed the instant action and a motion for stay of removal. Dkt. #1. On October 2, 2018, the Court temporarily stayed petitioner's removal pending resolution of his motion to stay. Dkt. #3. The government timely filed

a motion to dismiss, which is now ripe for review. *See* Dkts. #5, 8, 9.

The government argues that dismissal is appropriate because DHS properly designated Somalia for removal and petitioner has chosen not to seek review of that designation despite being provided an opportunity to do so. See id. The government also contends that petitioner should be required to challenge DHS's designation of Somalia in the immigration courts before seeking habeas relief and suggests that the Court may lack jurisdiction over the action. See id. Finally, the government argues that petitioner is not entitled to immediate release because his removal to Somalia is likely to occur in the reasonably foreseeable future. See id.

In opposing dismissal, petitioner argues that DHS is not permitted to lawfully designate Somalia outside of removal proceedings and without a hearing on his fear of persecution and torture. See Dkt. #8. Petitioner also asserts that DHS is barred from designating Somalia as his country of citizenship or nationality because it is bound by the judicial admissions in the NTA that he is a native and citizen of Kenya. See id. He argues further that DHS bears the burden of moving to reopen, that there are no exhaustion or jurisdiction issues prohibiting this Court's review, and that he is entitled to immediate release. See id.

## II.    DISCUSSION

The issues before the Court are (1) whether the Court has jurisdiction, (2) whether DHS may designate a removal country outside of removal proceedings, (3) the proper procedures for designating a removal country outside of removal proceedings, (4) whether DHS violated petitioner's rights in this case, and (5) whether

ORDER GRANTING IN PART
HABEAS PETITION - 7

petitioner is entitled to immediate release. As detailed below, the Court concludes that it has jurisdiction over the action, that DHS may designate a removal country outside of removal proceedings but that it must provide due process and comply with 8 U.S.C. §1231(b) when doing so, that DHS violated the Fifth Amendment and §1231(b) in petitioner's case, and that petitioner is not entitled to immediate release but is entitled to a bond hearing.

A.  Jurisdiction

The government argues that the Court lacks jurisdiction over this action to the extent it is interpreted as a challenge to the IJ's removal order, pointing to 8 U.S.C. §1252(a)(5). Dkt. #5 at 9 n.2. In the REAL ID Act of 2005, Congress amended the Immigration and Nationality Act to "expressly eliminate[] habeas review over all final orders of removal . . . ." A. Singh v. Gonzales, 499 F.3d 969, 977 (9th Cir. 2007). It provided that "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal." 8 U.S.C. §1252(a)(5); see Martinez-Rosas v. Gonzales, 424 F.3d 926, 928-29 (9th Cir. 2005) (under REAL ID Act, a petition for review in the court of appeals "is now the exclusive means for challenging final removal orders by the [Board of Immigration Appeals ("BIA")], except those issued pursuant to 8 U.S.C. § 1225(b)(1)").

The REAL ID Act effectively limits a noncitizen "to one bite of the apple with regard to challenging an order of removal." A. Singh, 499 F.3d at 977 (internal quotation marks and citation omitted). Thus, even habeas "claims that indirectly challenge a removal order" are prohibited. Martinez v. Napolitano, 704 F.3d 620, 622

ORDER GRANTING IN PART
HABEAS PETITION - 8

(9th Cir. 2012). "When a claim by [a noncitizen], however it is framed, challenges the procedure and substance of an agency determination that is *inextricably linked* to the order of removal, [a district court's review of the claim] is prohibited by section 1252(a)(5)." Id. at 623 (internal citation and quotation marks omitted, emphasis added).

The REAL ID Act, however, was "not intended to 'preclude habeas review over challenges to detention that are independent of challenges to removal orders.'" V. Singh v. Holder, 638 F.3d 1196, 1211 (9th Cir. 2011) (quoting H.R. Rep. No. 109-72 at 175). Accordingly, as a general rule, noncitizens "may continue to bring collateral legal challenges to the Attorney General's detention authority . . . through a petition for habeas corpus." Id. (quoting Casas-Castrillon v. Dep't of Homeland Sec., 535 F.3d 942, 946 (9th Cir. 2008)). The determination of whether a case raises independent claims or indirectly challenges a final removal order requires "a case-by-case inquiry turning on a practical analysis." Id. The "distinction between an independent claim and indirect challenge will turn on the substance of the relief that a plaintiff is seeking." Martinez, 704 F.3d at 622 (internal quotation marks and citation omitted).

The government relies on Tonfack v. Holder, No. 13-1886, 2013 WL 5570232 (M.D. Pen. Oct. 9, 2013), aff'd Tonfack v. Attorney General, 580 Fed. Appx. 79 (3d Cir. 2014) (unpublished). In Tonfack, the habeas petitioner was a national of Cameroon and a citizen of the Ivory Coast. 2013 WL 5570232, at *1. The IJ ordered him removed but failed to designate a removal country as required by BIA precedent; the IJ also granted withholding of removal to the Ivory Coast. Tonfack, 580 Fed. Appx. at 80-81. ICE then obtained a travel document from Cameroon and sought to remove him.

ORDER GRANTING IN PART
HABEAS PETITION - 9

Tonfack, 2013 WL 5570232, at *2. Through the habeas action, the petitioner challenged the validity of the travel document to Cameroon, ICE's decision to remove him to a country other than the Ivory Coast, and ICE's alleged failure to consider his CAT claims as they pertained to Cameroon. Id. The district court found that each of the petitioner's arguments directly challenged his final order of removal and dismissed for lack of jurisdiction. Id.

The Third Circuit affirmed in an unpublished opinion. Tonfack, 580 Fed. Appx. at 81. The Court of Appeals found that petitioner's claim that Cameroon was not a proper country of removal was encompassed in the removal order because the IJ was required to designate a country of removal during the removal proceedings. Id. According to the Third Circuit, the fact that the IJ did not select a country for removal was relevant to the validity of the final order. Id. The court also noted that the courts of appeals regularly consider petitions for review that challenge whether the immigration courts selected a proper country for removal or whether the IJ neglected to designate a country for removal. Id. The court declined to consider any due process argument because the IJ had reopened the petitioner's removal proceedings to allow him to challenge the proposed removal to Cameroon. Id. at 81 n.2. The court ultimately concluded that the petitioner could have raised his issues in a petition for review and that habeas review would violate § 1252(a)(5).

In this case, petitioner's claims are independent of his removal order. Petitioner does not challenge the IJ's determination that he is removable or claim any deficiency in the removal order itself. Rather, he challenges DHS's attempts, *outside* of removal

ORDER GRANTING IN PART
HABEAS PETITION - 10

proceedings, to designate Somalia without reopening his proceedings so that an IJ could make the designation in the first instance and/or determine whether petitioner's life or freedom would be threatened in that country. To resolve petitioner's arguments, the Court does not need to review the removal order. See A. Singh, 499 F.3d at 972 (habeas claim that does not require review of a removal order is not barred by § 1252(a)(5)). Furthermore, petitioner could not have brought these claims during his immigration proceedings. Tonfack, which is non-precedential, is distinguishable because the petitioner in that case alleged a flaw in his removal order—the IJ's failure to designate a removal country—that he could have challenged through a petition for review. The Court finds that it has jurisdiction over this action.

B.     Legal framework for designating country of removal

"After determining that a noncitizen is removable, an IJ must assign a country of removal." Hadera v. Gonzales, 494 F.3d 1154, 1156 (9th Cir. 2007). The IJ may also identify alternative countries. 8 C.F.R. § 1240.12(d) ("When a respondent is ordered removed from the United States, the immigration judge shall identify a country, or countries in the alternative, to which the [noncitizen's] removal may in the first instance be made, pursuant to [8 U.S.C. § 1231(b)(2)]."). The IJ's country designation must comply with the four-stage inquiry set forth in § 1231(b)(2). Jama v. ICE, 543 U.S. 335, 338 (2005); Dzyuba v. Mukasey, 540 F.3d 955, 956 (9th Cir. 2008) (per curiam); Hadera, 494 F.3d at 1156-57; Himri v. Ashcroft, 378 F.3d 932, 938 (9th Cir. 2004).

At step one, the IJ must give the noncitizen an opportunity to designate one country to which the noncitizen wants to be removed. See 8 U.S.C. §1231(b)(2)(A); 8

C.F.R. § 1240.10(f) ("The immigration judge shall notify the respondent that if he or she is finally ordered removed, the country of removal will in the first instance be the country designated by the respondent, except as otherwise provided under [§1231(b)(2)], and shall afford him or her an opportunity then and there to make such a designation."). If the noncitizen fails to designate a country or as an alternative in the event the noncitizen's designated country does not accept the individual, the IJ may at step two designate a country of which the noncitizen is a subject, national, or citizen. 8 U.S.C. § 1231(b)(2)(D); Hadera, 494 F.3d at 1156-57. Third, if no country satisfies the requirements of § 1231(b)(2)(D), the IJ must designate a country with which the noncitizen has a lesser connection, as specified in the statute. See 8 U.S.C. §§1231(b)(2)(E)(i)-(vi); Jama, 543 U.S. at 341; Hadera, 494 F.3d at 1157 (because there was no basis to designate a country under §1231(b)(2)(D), IJ should have continued to the third step). Finally, if removal under the third step is "impracticable, inadvisable, or impossible," the IJ must designate "another country whose government will accept the [noncitizen] into that country." 8 U.S.C. §1231(b)(2)(E)(vii); Jama, 543 U.S. at 341; Himri, 378 F.3d at 939 (holding that "at the time the government proposes a country of removal pursuant to §1231(b)(2)(E)(vii), the government must be able to show that the proposed country *will* accept the [noncitizen]") (emphasis in original).

Importantly, ICE may not remove a noncitizen to a country if the noncitizen's life or freedom would be threatened in that country because of the noncitizen's race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. §1231(b)(3). If the noncitizen expresses fear of persecution or harm upon return

ORDER GRANTING IN PART
HABEAS PETITION - 12

to any of the countries designated by the IJ, the IJ must inform the noncitizen that he or she may apply for asylum, withholding of removal, or relief under the Convention Against Torture ("CAT"). 8 C.F.R. §1240.11(c)(1); see also Jama, 543 U.S. at 348 ("If [noncitizens] would face persecution or other mistreatment in the country designated under §1231(b)(2), they have a number of available remedies: asylum, §1158(b)(1); withholding of removal, §1231(b)(3)(A); relief under an international agreement prohibiting torture, see 8 CFR §§208.16(c)(4), 208.17(a) (2004) . . . ."). "Failing to notify individuals who are subject to deportation that they have a right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process." Andriasian v. INS, 180 F.3d 1033, 1041 (9th Cir. 1999); see also Kossov v. INS, 132 F.3d 405, 408 (7th Cir. 1998) (IJ's failure to inform noncitizens, who were *pro se*, that they had the right to seek asylum was a "fundamental failure of due process").

The IJ's country designation is subject to judicial review in the courts of appeals. See e.g., Dzyuba, 540 F.3d at 956-57 (holding that substantial evidence did not support BIA's designation of Ukraine under §1231(b)(2)(E)(i) and remanding for determination of whether Ukraine was a "country" within the meaning of §1231(b)(2)(E)(i) at the time the petitioner entered the United States); Hadera, 494 F.3d at 1157-58 (holding that IJ had no basis for designating Ethiopia under §1231(b)(2)(D) and remanding to IJ for redetermination of the country of removal); Himri, 378 F.3d at 934 (holding that Jordan could not be designated as a removal country under any provision of

ORDER GRANTING IN PART
HABEAS PETITION - 13

§1231(b)(2)).

After the IJ's removal order is final, DHS is tasked with removing the noncitizen.[2] See 8 U.S.C. §1231(b)(2). The regulations provide that if DHS "is unable to remove the [noncitizen] to the specified or alternative country or countries, the order of the immigration judge does not limit the authority of [DHS] to remove the [noncitizen] to any other country as permitted by [§1231(b)]." 8 C.F.R. §1240.12(d). Subject to the prohibition on removal to a country where the noncitizen's life or freedom would be threatened, see 8 U.S.C. §1231(b)(3), §1231(b)(2) requires DHS to remove the noncitizen to his or her country of choice unless certain exceptions apply, in which case it shall remove the noncitizen to a country of which he or she is a "subject, national, or citizen." 8 U.S.C. §§1231(b)(2)(A), (C). If the government of that country is not willing to accept the noncitizen into the country or fails to respond to DHS's inquiries within a reasonable time, DHS shall remove the noncitizen to any other country as provided in §1231(b)(2)(E).

C.  <u>Whether DHS may designate a removal country outside of removal proceedings</u>

The government argues that it has the authority to designate a removal country outside of removal proceedings under §1240.12(d), which provides that if DHS "is unable to remove the [noncitizen] to the specified or alternative country or countries, the order of the immigration judge does not limit the authority of [DHS] to remove the

---

[2] The statute refers to the Attorney General; however, DHS "assumed responsibility for the removal program" in 2003. Jama, 543 U.S. at 338 n.1. As a result, the discretion formerly vested in the Attorney General under §1231 is now vested in the Secretary of Homeland Security. Id.

ORDER GRANTING IN PART
HABEAS PETITION - 14

[noncitizen] to any other country as permitted by [§1231(b)]." Petitioner responds that the government reads §1240.12(d) too broadly and that the Ninth Circuit has repeatedly held that a person may not be removed to a country that was not properly designated by an IJ under §1231(b)(2), citing to cases involving designation during removal proceedings. See Hadera, 494 F.3d at 1159; Himri, 378 F.3d at 938; Dzyuba, 540 F.3d at 957. Petitioner thus contends that the procedures that apply *during* removal proceedings also apply *after* removal proceedings.

As explained above, the regulations specifically require the IJ to designate a removal country during removal proceedings, and courts have instructed IJs to do so in accordance with §1231(b)(2). The regulations do not, however, require an IJ to designate a removal country after removal proceedings have concluded if DHS is unable to remove the noncitizen to the country originally designated. Instead, §1240.12(d) permits *DHS* to remove the noncitizen to another country as permitted by §1231(b). The statutory language of §1231(b) also grants authority to DHS, not the immigration courts, after removal proceedings: §1231(b)(2)(A) orders DHS to remove the noncitizen to the country he or she designated; §1231(b)(2)(C) authorizes DHS to disregard the designation under subsection (A) in certain circumstances, including when the designated country is not willing to accept the noncitizen; and §§1231(b)(2)(D) and (E) require DHS to remove the noncitizen to an appropriate alternative country. Given the express grant of authority to DHS under §1231(b)(2) and §1240.12(d), the Court concludes that DHS may designate a removal country outside of

ORDER GRANTING IN PART
HABEAS PETITION - 15

removal proceedings as permitted by §1231(b).³

D.   <u>Procedures for designating removal country outside of removal proceedings</u>

ICE regulations provide:

> When a respondent is ordered removed from the United States, the immigration judge shall identify a country, or countries in the alternative, to which the [noncitizen's] removal may in the first instance be made, pursuant to the provisions of [8 U.S.C. §1231(b)]. In the event that the Department of Homeland Security is unable to remove the [noncitizen] to the specified or alternative country or countries, the order of the immigration judge does not limit the authority of the Department of Homeland Security to remove the [noncitizen] to any other country as permitted by [8 U.S.C. §1231(b)].

8 C.F.R. §1240.12(d). For the reasons discussed above, the Court finds that this regulation gives the government discretion to designate a country of removal outside of removal proceedings, "[b]ut it must exercise that authority in the appropriate way." <u>Wani Site v. Holder</u>, 656 F.3d 590, 594 (7th Cir. 2011). That means the designation must be permitted by §1231(b) and the exercise of discretion must comport with due process. See <u>Oshodi v. Holder</u>, 729 F.3d 883, 889 (9th Cir. 2013) ("It is well established that the Fifth Amendment guarantees non-citizens due process during

---

³ The Court's decision is in accord with <u>Kifle v. Holder</u>, 507 Fed. Appx. 703, 703 (9th Cir. 2013) (unpublished) ("Even though the IJ did not make a finding on the record that Ethiopia was an appropriate country for removal under 8 U.S.C. §1231(b)(2), DHS had authority to designate it as such once it found that Sudan, the country designated in the IJ's order of removal, was unwilling to accept Petitioner. See 8 C.F.R. § 1240.12(d) . . . ."). The Court is not persuaded by petitioner's argument that if § 1240.12(d) allows DHS to designate outside of removal proceedings, there would have been no reason for the courts in *Dzyuba* or *Hadera* to remand to the immigration courts to determine whether the designation was appropriate. Dkt. #8 at 15. Both <u>Dzyuba</u> and <u>Hadera</u> involved designation *during* removal proceedings, and therefore the procedural posture of those cases was materially different than the situation here. See <u>Dzyuba</u>, 540 F.3d at 955; <u>Hadera</u>, 494 F.3d at 1155.

ORDER GRANTING IN PART
HABEAS PETITION - 16

removal proceedings."); Reyes-Melendez v. INS, 342 F.3d 1001, 1008 (9th Cir. 2003) ("[A] due process violation is not an exercise of discretion."). "The essence of due process is the requirement that a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it. All that is necessary is that the procedures be tailored, in light of the decision to be made, to the capacities and circumstances of those who are to be heard to ensure that they are given a meaningful opportunity to present their case." Mathews v. Eldridge, 424 U.S. 319, 348-49 (1976) (internal quotation marks and citations omitted) (alteration in original). The Fifth Amendment's procedural protections are a limitation on government action that applies throughout the deportation process, whether during or after removal proceedings.

A noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation. See Mathews, 424 U.S. at 349; Kossov, 132 F.3d at 408. In this case, the ICE deportation officer notified petitioner that Kenya had denied ICE's request for travel documents and that deportation to Somalia was a possibility. When petitioner objected, he was told that he should wait to see if travel documents could be obtained from Somalia before attempting to challenge the newly-designated country of deportation. Once travel documents were obtained, however, ICE withheld information and provided no opportunity to challenge the designation or seek withholding of deportation. ICE took petitioner back into custody and refused to tell him what was going on or what they were planning to do with him. Petitioner had to piece together information from other detainees to figure out that ICE

ORDER GRANTING IN PART
HABEAS PETITION - 17

intended to deport him to Somalia. ICE's attempt to remove petitioner to Somalia without notice, much less an opportunity to be heard, violated petitioner's due process rights. In addition, there is no indication that ICE notified petitioner that he had a right to apply for asylum or withholding of deportation to Somalia despite his earlier objections to deportation to that country. Ninth Circuit case law suggests that this failure, in and of itself, is also a violation of the constitutional right to due process. Andriasian, 180 F.3d at 1041). See also Najjar v. Lynch, 630 Fed. App'x. 724 (9th Cir. 2016) ("In the context of country of removal designations, last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country.")

The government argues that the petition should nevertheless be dismissed because petitioner has now been provided both notice and an opportunity to be heard regarding his fear of violence or persecution. When petitioner realized he was being deported to Somalia and contacted an attorney, ICE cancelled his scheduled removal in order to give petitioner an opportunity to seek asylum or related relief from deportation. Three months later, petitioner had not moved to reopen the removal proceedings, however, and ICE warned that it would proceed with the deportation to Somalia the following month. ICE apparently believes petitioner received all the process that was due through this procedure. The Court disagrees.

The Fifth Amendment requires that ICE provide a meaningful opportunity for petitioner's claim of fear to be heard. The guarantee of due process includes the right to a full and fair hearing, an impartial decisionmaker, and evaluation of the merits of his

ORDER GRANTING IN PART
HABEAS PETITION - 18

or her particular claim. Torres-Aguilar v. INS, 246 F.3d 1267, 1270 (9th Cir. 2001). None of these procedural protections was provided. In addition, §1231 prohibits ICE from removing a noncitizen to a designated country if it determines "that the [noncitizen's] life or freedom would be threatened in that country because of the [noncitizen's] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §1231(b)(3)(A). ICE's authority to remove a noncitizen to a country not specified in the immigration judge's order of removal is contingent on its compliance with §1231(b): it therefore has an affirmative obligation to make a determination regarding a noncitizen's claim of fear before deporting him. Thus, both the due process clause and the governing statute place the burden on the government – regardless of whether the country of deportation is designated during or after the removal hearing – to provide a meaningful opportunity to be heard on asylum and withholding claims. It has not done so in this case. Giving petitioner an opportunity to file a motion to reopen – a motion which seeks discretionary relief that may be denied without any sort of hearing – is not an adequate substitute for the process that is due in these circumstances. "The importance of an asylum or withholding applicant's testimony cannot be overstated," and requiring petitioner to make a compelling and credible showing of fear of persecution through a declaration in support of a motion to reopen is not an adequate substitute. Oshodi, 729 F.3d at 889.[4]

---

[4] The Court acknowledges Zabadi v. Holder, 407 Fed. App'x. 219, at *3 (9th Cir. 2011), but is not persuaded that the Ninth Circuit intended to resolve the issue raised in this case. Mr. Zabadi sought judicial review of an immigration order that acknowledged DHS' authority to designate a country following the close of removal proceedings. The government argued that the petition was not ripe because it had not exercised its discretion and the

ORDER GRANTING IN PART
HABEAS PETITION - 19

For all of the foregoing reasons, the removal proceedings against petitioner shall be reopened and a hearing shall be held before the immigration judge so that petitioner may apply for relief from removal to Somalia. At the hearing, petitioner may pursue an application for asylum, withholding of removal, and/or protection under the Convention Against Torture, as well as his arguments that ICE is bound by its judicial admission that he is a native and citizen of Kenya and that the agency's efforts to deport him to Somalia are barred by the doctrines of res judicata and/or estoppel. Petitioner is also entitled to a bond hearing if he has not already had one. Petitioner shall not be deported to Somalia unless and until the immigration judge makes the required determination under §1231(b)(3)(A).

Dated this 20th day of June, 2019.

*[signature]*
Robert S. Lasnik
United States District Judge

---

petitioner had suffered no redressable injury. The Ninth Circuit accepted the government's representation that it would not do to Mr. Zabadi what it tried to do to Mr. Aden in this case, namely utilize the authority provided in 8 C.F.R. §1240.12(d) to whisk the immigrant away in the middle of the night for deportation to a newly-designated country with no forum or possibility of challenging the deportation to a country in which he feared torture or persecution. In this context, the court noted that "[s]hould DHS decide to change the designated country of deportation, [petitioner's] claim will ripen, and he will be free to pursue appropriate legal remedies." Id. There is no indication that the Ninth Circuit considered the procedural implications of putting the burden on Mr. Zabadi "to pursue" relief. Given the context in which this statement was made, it is dicta and does not compel the conclusion that the only remedy for a due process violation is the filing of a discretionary motion requesting that removal proceedings be reopened which could be denied without ever reaching the merits of the asylum claim or other request for withholding of deportation.

ORDER GRANTING IN PART
HABEAS PETITION - 20